Good morning, Your Honors. May it please the Court, I'm Bob Pratt from Fulbright and Jaworski. With me today is my co-counsel, Pilar French, from the Lane Powell Firm. We represent the appellants in this manner, and I'm going to refer to Wardage Electronic Registration Systems as MERS, and to Bank of America as BANA or BFA throughout these proceedings. So let me ask you, this is an interactive court, my apologies if I'm sort of like stealing your thunder a little bit. I'm Judge Block, and I just have a couple of questions to ask you. You were given, if I read the record correctly, the opportunity to submit evidence or proof of the nexus between MERS and BOA to show that, you know, BOA actually was the person that had the authority to go forward, but you submitted very little in that respect. I'm just curious as to what exactly you did to comply with the judge's request to give you the opportunity to submit additional papers. I'd be happy to answer that, Your Honor. I think the short answer is that we were not given the opportunity. I think it's important to consider the context in this. This was a Rule 12 motion to dismiss, and on a Rule 12 motion, as the Court knows, we don't submit evidence. What Judge Panner asked for, very specifically, was a record of the assignments of the deed of trust and the assignments of the promissory note. Now, there is no such thing as a record of assignments of promissory notes. When they become bare of paper, they're treated like dollar bills. And so we submitted the best information we could at that point in time, which was, and this is part of the industry at that time here, he wanted what is known as the MERS milestones and the MINS summary. Do you have other documents or evidence you could submit, or is this all you have? Absolutely, Your Honor. This is a preliminary hearing. We're more than happy and ready, stand ready to prove that Bank of America is the holder of the note. We can produce the original note. What else do you have? You know, we're looking at the niceties of this posture of the case in summary judgment mode. Maybe it should not have been. Maybe it wasn't properly converted. But I'm just, as a practical matter, wondering if this case has to go back, obviously, because of the intervening decisions. But what would you be submitting if the case were remanded? Oh, I think it would be very straightforward, Your Honor. I think that under the UCC, what we would submit is the original wet ink note, which has now been endorsed in blank in this bare of paper. And we would show that that is there. The one point that Judge Panner commented on with regard to the MERS milestones, that there was no record of the negotiation of the promissory note from GN Mortgage, the originating lender, to GN, to its parent guaranteed bank. And the reason that was not in the milestones is because it happened before the loan was registered on the MERS system. The battle, if you will, at that point in time in Oregon was... I understand that. But you have the documents now. You're ready to go. Absolutely, Your Honor. We stand ready, willing, and able to prove up the note. It's a kind of formality to send it back to give you the opportunity to produce the documents you did not, for whatever reason, produce before, because you did not interpret the judge's request, you know, in that direction, so to speak. That is exactly correct. There's absolutely zero indication in the record that Judge Panner was even considering note ownership as an issue, or that he was going to convert our motion to dismiss into a summary judgment motion against us. And I think that's the... In all of my years of practice, I've never seen that kind of a flip without notice or a full and fair opportunity. Do you then take the position that there's no way that this court here can give you the relief you want now, that you must go back and take care of all this and clean it up, so to speak, on remand? Yeah, I believe that is correct, Your Honor. I mean, there's an argument that because the hookers did not present evidence that they are ready, willing, and able to cure to default, that they're not entitled to the equitable relief.  I think that in light of Brandrup and Nadei, I think reverse and remand to apply Oregon laws interpreted by the Supreme Court... You're not asking us to make this decision now. You acknowledge that it has to go back? Absolutely not, Your Honor. I think that the Oregon Supreme Court has actually made your job and mine easier. I think that the short answer is the case has got to be reversed and remanded to the district court, and we stand ready, willing, and able to approve up a trial, what we need to to establish that Bank of America owns the note and is entitled to enforce it, and under Brandrup, that they are the beneficiary of the deed of trust, and we can resume the foreclosure proceedings. Now, the residential home may take it. Yes, it is. Yes, it is. On your view of the case, would it be necessary to show in any sense that MERS gave authority to B of A, or does B of A have the authority to foreclose simply by virtue of its ownership of the note? I think under Brandrup, I think that B of A, and I think under the UCC, a note holder or a note owner is entitled to enforce the promissory note. Brandrup has made it clear that under Oregon law that the person that is entitled to payments under the promissory note is the beneficiary under the deed of trust, so I think it's an absolute lay-down that we can absolutely foreclose on the mortgage or honor. Okay. Well, I might be inclined to leave that to Judge Panner in the first instance, but I understand the argument. So I think in light of the Court's comments, I'm not going to comment any more on Brandrup. I think that we're of a like mind. Where Brandrup helps you is to say there's no necessity under Oregon law to record every time MERS makes a transfer from one beneficiary to another. Because that was the ground on which you lost in front of Judge Panner. Exactly. Just to clarify, any time the note is negotiated, MERS does not, it's one of the misconceptions, MERS does not transfer promissory notes and no transfers are made on the MERS system. The notes are negotiated under the UCC, they're endorsed, and most of them are converted into bare paper at this point in the industry. So I think with that, I'll leave that issue aside and move on to other things. I think that one of the things that the hookers raised in their reply brief for the first time, the notion about who owns the note, that was never an issue below. And I think that that is something that we did not think was an issue until the reply brief came in. And I think the procedural aspect of it there is that they asked this Court to affirm on other grounds. As this Court is aware more than I, the appellate court is not engaged in de novo findings of fact. And the great irony is the only information in the record below with regard to the negotiation of the hooker's note states unequivocally that Bank of America is the owner of the note and that is uncontested in there. That was done in response to, I think it was docket entry 22 or 23, where Judge Panner asked for briefing on the issue that was pending, that was argued to the Minnesota Supreme Court in the Jackson case. That issue is not who owns the note. That issue is does the new owner of the note have to record an assignment of the equitable assignment, which is the same question that Brandreth said no. And in there, we made it very clear that in point of fact that we own the note. And there's nothing in the record to counteract that. And there is absolutely nothing in the record that would provide an evidentiary basis for this Court to affirm on any other grounds. Notwithstanding the 60-some-odd docket entries in this Court, there's almost nothing in this case. This was a complaint that was filed, the crux of which was Murrs can't be the beneficiary. Well, obviously that issue is gone. Nothing in there about note ownership. There basically is no evidence in the record. And Judge Panner converted it, issued the order sua sponte. The other issue they raise is that because we didn't file a motion to reconsider that somehow this Court is stripped of jurisdiction, I'm not aware of any case that holds that at all. So I think what I would like to do is reserve the rest of my time for rebuttal and ask this Court to reverse and remand to Judge Hooker for proceedings consonant with the ruling of the Court. Judge Panner. I'm sorry, Judge Panner. I keep saying Judge Hooker. I'm so sorry. Thank you. My apologies to Judge Panner. There you go. Let's hear from the other side, and you do have some time. Well, you've done a great job dodging the bullet for your clients so far, but don't you think that whatever the expression is, that now you have to come to peace with the fact that you've got this remand, right, and that they obviously are going to have an opportunity to submit to the Supreme Court,  what do you expect to accomplish on remand as a practical matter? Well, Your Honor, I don't think you need to remand. In fact, I don't think you should. And as Mr. Pratt has just argued, there's no evidence in the record. And so there's no disputed question of fact here that would require this Court to remand. Bank of America had the opportunity to prove up all transfers of the note and trustee. When a court asks a party to submit facts into the record, it expects the party to do that through affidavits of a person with knowledge or a custodian. They did neither here, and they should not be hurt to complain that now there's no evidence to support remand. Okay. Let me interrupt you for just a minute. State your name and where you're from. I apologize, Your Honor. No, that's okay. I understand. I know you answered the question, but I just want to make sure we get you on. My name is Nina Simon. I represent the plaintiffs at Pelley's. Okay, good. My apologies. I'm glad your name is not Hooker. But as I see it, the district judge made a mistake of law. Understandably, he made a mistake of law because the Oregon Supreme Court hadn't yet decided the case. But we now know that the judge made a mistake. It seems to me appropriate that we should remand to the district court now that the law has been clarified by the Oregon Supreme Court because different questions may now be relevant. And why not send it back so the district judge now has the appropriate law in mind now that the Oregon Supreme Court has told us what it is? Certainly this court has authority to remand. We don't dispute that. Well, the question is not whether we have authority, but whether it's the right thing for us to do. Why would it not be the right thing for us to do? Well, this court's Spokane County decision talks about exactly the circumstance where there's been an intervening authoritative decision of law, and it ruled that this court can affirm if the record is sufficient. In that case, there were new facts that had to be offered into evidence. But here there aren't new facts. Well, what about the fact of whether or not I don't know whether to call it new or not, so I guess I'm going to need to ask you how you would characterize it. Well, let's assume for the moment that B of A actually owns the note. I'm not sure that Judge Tanner, Judge Panner, knew or considered that relevant. So what if we were to say conclusively B of A owns the note? I'm not asking you to say for sure, but let's assume that we know that. What then? What happens? Well, we need to know that B of A owned the note at the time that it initiated the foreclosure. It really doesn't matter if they own it now. And you're saying we're not sure whether it, on the current state of the record, we don't know whether B of A owned the note at the time of the attempted foreclosure. Is that what you're saying? There's no evidence at all in the record about B of A's ownership, and NIDA makes clear that the materials that have been submitted here, the MERS documents, are not evidence. Okay, now that we know what the Supreme Court of Oregon has told us the law is, is it relevant to the disposition of this case whether B of A was the owner of the note at the time of the attempted foreclosure? Yes, that's relevant. It is relevant, yeah. I also didn't hear Mr. Pratt offer to prove up that there was authority to appoint the successor trustee. The Oregon Supreme Court, in both NIDA and Brandrup, made clear that not only must the beneficiary be the real beneficiary when it initiates foreclosure, but that only the beneficiary can appoint a successor trustee with the right to foreclose. So we might need to establish that on remand if it goes back? Well, absolutely. There are two appointments of successor trustee here. One is by MERS. One is by Wells Fargo as attorney-in-fact for Bank of America. There is no evidence that Wells Fargo has authority as attorney-in-fact to represent. So it sounds as though we should send it back for establishing whether that's true or not, unless for some reason something happened below to make it unfair to give B of A two bites at the apple. So why would it be unfair to allow B of A to present that evidence now? Well, we argue it's unfair because the judge's order was very clear. He asked for all assignments of the note indeed, and they did not provide that information. And, in fact, they incorporated by reference into one of their submissions to the court here documents that they had submitted in a parallel proceeding in which they were also defendants called Zoller v. Bank of America. There the court had entered the same order, and in response to that, and actually the affidavit of the servicer says, in response to this court's order, we asked our custodian to deliver the original note from its custody. They presented a true and correct copy of that note, and they also submitted other testimony. So what evidence do we have that Bank of America was on notice that Judge Panner was likely to turn this 12 motion, Rule 12 motion, into summary judgment? Well, excuse me, Your Honor. They did it themselves, Your Honor. They, in their motion to dismiss, they requested judicial notice of extrinsic facts that conflicted with the facts of the complaint. They submitted three land records documents that they created after the complaint was filed, and that purported to change the facts of the complaint, and they asked the court to rely on them. In other words, they ---- Yeah, but summary judgment ordinarily requires ample notice to both sides. Wait a minute. Well, I'm about to convert this to summary judgment. You guys better be on notice. Then all kinds of things happen. It doesn't seem to me that that happened in the district court here. Well, it seems to me that Merz and Bank of America were quite aware, and they've cited Lee v. City of Los Angeles, which is a case that stands for the proposition that when a party submits on a motion to dismiss extrinsic evidence, which is what they've done here, that conflicts with the complaint. Here we have a new appointment of successor trustee saying that this appointment is correct, conflicting with the complaint where the original appointment is asserted to be the correct one. They rescind the notice of default that's the basis for the original complaint and purport to have a new notice of default entered. I think they were quite aware that they were creating a summary judgment record when they did that. In addition, they were given plenty of opportunity to submit documents here. They submitted multiple supplemental pleadings. They provided these affidavits. But if it turns out, of course, that the evidence doesn't exist, and they cannot establish that B of A was the owner of the note at the time of death or foreclosure,  That's correct, Your Honor. So what are you afraid of? That they might actually have the evidence that they were the owners of the note? No, Your Honor. I'm not afraid of that. I'm not afraid of that. I think their conduct in this proceeding indicates quite the opposite. Can I take a different tack here? I don't know anything about the underlying dynamics about how much money was due here, what the nature of the default is. It's a residential home. Is there any possibility that the mediation may be of some value here? Because my sense is that if we remand, that Bank of America is going to probably produce the documents. They made a representation here that they have it. Is there any way of resolving this matter by sitting down and seeing whether you can deal with this in a practical way, or am I just thinking foolishly? Well, we would, of course, be open to that, Your Honor. Have any methods been made in that direction so far? Not that I know of, Your Honor. Do you think mediation might be of value to the parties here to resolve this dispute? Well, I don't know. I'd have to consult my clients. But I would point out that whatever happens here and whatever happens on remand, if Bank of America is the note holder, they will have to initiate a new foreclosure because this foreclosure proceeding has expired. How much of a default are we talking about here, practically speaking? Your Honor, I don't know the answer to that question. We know all about the legal issues, but we don't know the reality on the ground, right?  Okay. Is this case, as it were, a freestanding case, or is it a stalking horse for a group of cases? I mean, that might affect how easy it is or is not to settle. As far as I know, it is not a stalking horse. Then there are no other cases kind of linked in your office related to this one and so on? No, Your Honor. This is a freestanding case. That's correct. That would make it easier to settle then, yeah. Presumably. Has the mediation office contacted the parties in this case? I mean, we have a mediation office. It's pretty good. I'm not aware that they have. I'm not aware that they have. Okay. I guess, well, I have a little bit more time. I guess my biggest concern here is that, and it's a concern that's expressed by the Oregon Supreme Court and by other state Supreme Courts, the Washington Supreme Court, and most recently, and a few weeks ago, the New Mexico Supreme Court in its Bank of New York v. Romero decision, that banks are consistently coming into court and seeking to take people's homes without any indication that they have the right to do that. And that's the biggest concern here. That's our concern with respect to the Bank of America's failure to prove up its rights before, or not even to prove it up, but to put in any evidence whatsoever that they had rights in those notes before. And that this is a common practice right now. In fact, the New Mexico Supreme Court took cert in 2014 Westlaw 576151 just a few weeks ago because it had a consistent problem of lenders coming into court, waiving notes that were not endorsed to them and seeking to enforce those notes and actually being quite successful in that case. Both the trial court and the court of appeals had allowed this lender, agreed that they had standing to proceed with a foreclosure where there was no evidence that they were the person entitled to enforce. And so I guess our biggest concern here is that whatever this court does in this decision, that it make clear to the district courts that they need to follow strictly the Oregon Supreme Court's requirement for evidence. I understand that, but it seems like such a simple matter. Maybe I'm coming from the mindset of a district court judge, that you can talk to your adversary and say, show me the need. You know, they say that you have the documents. You can sit down and in two seconds you can tell whether or not it's legitimate or whether or not they're trying to do an end-run around here or doing something that would not be appropriate. It just cries out to me, you know, for a sit-down session here to see what they have, to see whether you can resolve this matter. Maybe I'm coming out of left field here. No, I understand, Your Honor. Today, a few minutes ago, is the first moment that we've heard any statement that Bank of America has a note or that they can prove up their beneficiary. This is the first time. And I refer, Your Honor, to the letter brief where we have many assertions about Bank of America's rights, Wells Fargo's rights, Murrah's rights, even the rights of a company. I think that's why I asked them the question, you know, just curious. Right. But I mean, they have not relied on any evidence. They haven't proffered any evidence until today. And in fact, they do things like they say, you know, a bank has the right to take an asset of its subsidiary and dispose of it without proving even that that company is its subsidiary. And that's really the concern. For lawyers on the ground practicing in this area, the really serious problem is that too often banks and other financial services entities are allowed to foreclose and take people's homes without having the right to do so. Okay. Well, from what I'm hearing, you and your client think you might be willing to go to mediation on this one? We've got a mediation system connected to the Ninth Circuit that you may or may not be aware of. It's a really nice mediation service in that it's free. I mean, lawyers charge for their times, but you don't have to pay the mediators. I would never decline such an offer. Okay. Okay. If there are no more questions. Well, we need two people to tango, I guess, right? That's right. We need two people to tango, right? Are you willing to bend an oar here to see whether this can be resolved? You made a representation that you have the goods. You haven't spoken to each other. Do you think maybe the time has come to sit down and see what exactly you have to satisfy your adversary that you will be successful if it were to be remanded and see whether or not we can negotiate some sort of a resolution of this matter? Clients are always willing to talk about resolution, but let me give you a context if I could, because one of the questions you asked that Ms. Simon couldn't answer because she wasn't involved below was the status of the loan. In September of this year, the hookers will not have made a mortgage payment on this loan for five years. And what's the outstanding balance? Well, the loan was a quarter of a million dollars, so I haven't done the math recently, but it's going to be probably well over $300,000 at this point. But that's the range we're talking about. So it's a significant amount. And, by the way, the court, the Ninth Circuit mediation did contact us early on in this proceeding. I believe it might have been before Ms. Simon was involved, and we declined to participate in the mediation. We didn't see it as being valuable at that time because the fundamental issue that was being fought at that time was whether MERS could be a beneficiary. That was the end-all, be-all. And I understand why you need a ruling on that. Now we have a ruling on that and the other case. Exactly. So times have changed. Would mediation from your standpoint be fruitful at this time? With that big a default, it's hard to know. It is possible. The clients always look at, you know, is there a way to resolve this without litigation? It's not inexpensive to be here, obviously. And they would certainly, you know, look at that and approach it fairly. You know, whether it's done, you know, down below or done up here, I think it's a horse apiece. Well, we need to consult with Judge Trott. And, of course, we need to talk between ourselves other than just on the bench here. But it occurs to me that it may be useful to ask you to think about it. And then we would refer it to our skillful and very cheap court mediators. The price is right, absolutely. Okay. Thank you. Thank you. I think a couple of things that I just want to point out. This is not the first time they've heard that BANA owns NIL because it's in the record we submitted. It's in the docket entry. So we say in the supplemental memorandum that the judge asked for, but in point of fact that BANA, Bank of America, is the note holder. And as an indicator, we are ready, willing, and able to prove that up. We also, on the observation by Judge Panner that there is no record in the MIN milestones about the negotiation of the note from GN Mortgage to Guarantee Bank as parent, the reason that's not in the milestones is because it happened before the loan was registered on the MERS system. The MERS system does not track anything that happened before that. So I think that's kind of a non-issue. Ms. Simon says we didn't provide evidence. The judge asked us to provide, in addition to the memorandum, one thing, a record of the assignments of the promissory note and the deed of trust. The only assignment of the deed of trust was already in the record, which was the one from MERS to BANA. It was in the record, and it was recorded in the county land records. There is no such thing as a history of the promissory note negotiation, and so we provided the best information we had on that chain of title that Judge Panner asked for, which was the MERS milestones. Defendants don't have to prove their case in the context of a motion dismissed or assembly judgment motion. In fact, it would be inappropriate for the court to make findings of fact in those instances, as this court is well aware. So she's equating what she wants this court to do is to infer that we could not produce evidence of Bank of America's simply because of the fact that we did not introduce it in the context of our motion to dismiss, and we didn't introduce testimony in that case. Frankly, it would never occur to me to do that. There was nothing in any of Judge Panner's orders. There is no docket entry of any kind that remotely hints that this was going to be converted to a summary judgment motion or that asks us to produce that type of evidence. We haven't even answered the complaint yet. And so I think that, you know, what she's trying to do is to really convert a fairly preliminary argument on a motion into a de facto trial on the merits and get a permanent injunction against foreclosure. And I think that's unprecedented. I think it's unfair. It's unreasonable. I just don't think this court can do that. I think the Court has indicated. I mean, I think that remand is the point of issue here. I'm not going to get into the trustee appointment. Again, that begs for remand and evidence. And I think that's what, at the end of the day, that's what we have to do. And if the Court has no more questions, I think that pretty much. Thank you, Your Honor. Roberts. Thank both sides for their arguments. Because we don't have Judge Trott here on the bench, I'll hold off. I think the next thing with respect to mediation you should expect from the Court is an order from us, if Judge Trott and Judge Block and I agree, an order from the Court asking whether it would be in your view it would be fruitful to go to mediation. And then depending on what the answer is, we'll go forward from there. Okay. Thanks very much. Hooker v. Bank of America submitted for decision.
judges: Block, Trott, Fletcher